# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **EMMANUEL THURMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.:** |
| ) | |
| **MS COMPANIES,** ) | |
| ) | **JURY DEMAND** |
| **Defendant.** ) | |

## COMPLAINT

### I.   INTRODUCTION

1. This is an action alleging disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101 et. seq., brought by Emmanuel Thurman.  Plaintiff is a qualified individual with a disability. Plaintiff alleges that Defendant discriminated against him based on his disability, his record of disability, and Defendant's perception of Plaintiff as disabled, in violation of the ADA.  Plaintiff seeks injunctive relief, equitable relief, reinstatement, lost wages and benefits, compensatory damages, and reasonable attorney fees and costs.

### II.   JURISDICTION

2. This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the ADA. Plaintiff timely filed his charge of discrimination within 180 days of the occurrence of the last discriminatory act and the Equal Employment Opportunity Commission investigated. On March 9, 2022, the EEOC issued a Conciliation Failure and Notice of Rights letter. Plaintiff timely filed this lawsuit.

### III. PARTIES

4. Plaintiff, Emmanuel Thurman, is an individual over the age of 19 years and is a resident of Tuscaloosa, Tuscaloosa County, Alabama. Plaintiff is an individual with a disability, has a history of a disability, and is regarded by Defendant as disabled. Despite this disability, with or without reasonable accommodation, Plaintiff could perform the essential functions of his position. Consequently, Plaintiff is a qualified individual, as defined under the ADA.

5. Defendant MS Companies (hereinafter "MSC") is an "employer" as defined under the ADA and subject to compliance with the ADA. 42 U.S.C. 12111(5). Defendant owns and operates an employment center in Tuscaloosa, Tuscaloosa County, Alabama.

### IV. FACTUAL ALLEGATIONS

6. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

7.      On April 4, 2021, Defendant MSC hired Plaintiff Emmanuel Thurman to work in the position of Quality Supervisor.

8.      MSC provides various types of personnel supervisors to client companies.

9.      On or about April 5, 2021, Thurman began working as a Quality Supervisor at Lear Corporation's plant in Vance, Alabama.

10.     As a Quality Supervisor, Thurman monitored Lear employees' daily attendance and handled the electronic paperwork for daily work reports.

11.     Thurman performed his job well.

12.     Thurman's supervisor was Geri Clark.  Clark was located at MCS's administrative office in Tuscaloosa, Alabama and had few in-person interactions with Thurman on day to day activities in his position as Quality Supervisor.

13.     In May of 2021, Thurman was moved to the position of Quality Supervisor at SMP, an automotive manufacturing plant in Tuscaloosa, Alabama.

14.     Thurman's job duties as Quality Supervisor at SMP were similar to his job duties as Quality Supervisor at Lear Corporation.

15.     Thurman continued to perform his job well.

16.     On or about May 25, 2021, Clark called Thurman and asked if he would step into the position of "Liason" at ARD for 30 days.

17.     Clark described the position as a go-between for MSC's client company and

Mercedes. Clark indicated that Thurman would be involved in customer relations communications as well as productivity reports similar to those he completed as a Quality Supervisor. Based on Clark's verbal description of the Liason position job duties, Thurman agreed to move to the temporary position.

18. On or about May 27, 2021, Thurman arrived at ARD and soon discovered that the position's actual duties did not match Clark's verbal description. Instead, Thurman was required to spend almost his whole shift working on the manufacturing line. The manufacturing line positions at ARD require standing in one place for over two hours without a break and significant bending and squatting.

19. That same day, Thurman contacted Clark to express concern about the actual job duties of the Liason position. Thurman let Clark know that he had knee and back issues and would not have agreed to the temporary Liason position if he had been aware of the actual job requirements.

20. Clark indicated that she would have Jason Reil, who was then the Director of Operations for MSC and based out of Montgomery, call Thurman.

21. Later on May 27, 2021, Reil called Thurman. Thurman again explained the difference between his actual job duties at ARD and the job duties he had been told to expect. Thurman also explained that he had a disability and, as a result, was unable to complete the ARD Liason position's actual job functions. Reil told Thurman that

he needed documentation about Thurman's restrictions. Reil also told Thurman that he (Reil) would look for a replacement for Thurman at ARD.

22. Thurman reminded Reil that he (Thurman) had no problems working in his other Quality Supervisor jobs and would be happy to return to that position at SMP or another company.

23. On May 28, Thurman attempted to complete another shift in the Liason position at ARD while he waited for Reil to find a replacement, but the work was causing him to experience severe pain.

24. Thurman contacted Clark and let her know that he could not complete his shift due to the pain. He also let Clark know that he had to set an appointment with his doctor in order to get the requested information about his disability and need for certain accommodations.

25. Clark said that she or Reil would contact Thurman to let him know whether or not they had somewhere else to place Thurman.

26. Thurman has a physical impairment of his back and spine which substantially limits him in the major life activities of, *inter alia*, standing, bending, squatting, and kneeling.

27. Thurman contacted his treating neurologist at the Department of Veterans Affairs Medical Center in Tuscaloosa in order to get the requested documentation

about his disability. Thurman scheduled the appointment for as soon as possible, which was June 3, 2021.

28. On June 3, 2021, Dr. Daniel Potts, Thurman's treating neurologist, wrote a letter confirming that Thurman had been diagnosed with several conditions including lumbosacral spondylosis/stenosis with radiculopathy. Dr. Potts described the limitations caused by this physical impairment, which included inability to stand for prolonged periods, squat, kneel, and frequently bend. Dr. Potts recommended that Thurman be allowed a 15 minute sitting break for every 2 hours of standing and be allowed to move around during the two hours of standing.

29. That same day, Thurman texted a copy of Dr. Potts' letter to Clark. Thurman also sent a copy of the letter to Reil.

30. Thurman contacted Clark again on June 4, making sure that she had received Dr. Potts' letter and asking about when he could return to work.

31. Clark told Thurman that Defendant was looking in to the situation. Clark said Thurman could return to work if his doctor released him with no restrictions.

32. Thurman asked about returning to his previous position as a Quality Supervisor and reminded Clark that he was able to perform his job as Quality Supervisor keeping within his doctor's restrictions and without the need for accommodations.

33. Clark did not speak with Thurman about reasonable accommodations such as

a transfer to an open Quality Supervisor position, nor did Clark otherwise engage in the interactive process. Instead, Clark told Thurman to stop communicating with her and contact Defendant's Human Resources department.

34. Thurman contacted Human Resources, as instructed, and provided them with Dr. Potts' letter.

35. On or about June 16, 2021, Thurman spoke on the phone with two employees in MSC's Human Resources department, Jennifer Gaddis and Yvette Summers. Summers said that MSC did not have any work for Thurman because of his doctor's limitations.

36. Thurman disputed this.

37. Thurman could perform the essential functions of the Quality Supervisor position without reasonable accommodations.

38. To the extent that any of Thurman's job duties as Quality Supervisor at a particular location would have been impacted by his doctor's restrictions resulting from his back/spine impairment, Thurman could have accomplished the duties with reasonable accommodations.

39. Alternately, there were other jobs at MSC which Thurman could have performed with or without accommodations and in keeping with his doctor's restrictions.

40. Defendant did not discuss reasonable accommodations during the June 16 telephone call.

41. Providing reasonable accommodations to Thurman would not have been an undue hardship on Defendant.

42. On or about June 21, 2021, Thurman realized he was not able to access his MSC email account. Thurman contacted Summers and learned at that time that he was terminated, allegedly for lack of work.

43. Thurman disputes this alleged lack of work. At that time, and over the next several months, MSC filled open Quality Supervisor positions and other job positions which Thurman could have performed, with or without reasonable accommodations.

44. Defendant intentionally discriminated against Thurman based on his disability, by failing to reasonably accommodate him and by terminating his employment, in violation of the Americans with Disabilities Act, as amended.

45. Thurman is an individual with a disability but is able to perform the essential functions of the job of Quality Supervisor or other positions, with or without accommodation.

46. In denying Thurman employment and/or reasonable accommodations related thereto, Defendant intentionally, willfully, and maliciously discriminated against Thurman on the basis of his disability, in complete disregard for his federally

protected rights.

47. As a result of Defendant's actions, Thurman has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Thurman has suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

48. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

49. Plaintiff Thurman is a person with a disability, as that term is defined by the Americans with Disabilities Act. Plaintiff also has a record and history of a disability; and Defendant regarded Plaintiff as disabled. See 42 U.S.C. 12102.

50. Defendant is a covered entity and an employer in accordance with 42 U.S.C. 12111(5).

51. Plaintiff is a qualified individual as defined under the ADA. Despite Plaintiff's disability, with or without reasonable accommodation, he is able to perform the essential functions of the job of Quality Supervisor and other positions. See 42 U.S.C. 12111.

52. Under the ADA, Defendant is prohibited from discriminating against Plaintiff,

a qualified individual, on the basis of disability in regard to, *inter alia*, job training, discharge, and other terms, conditions, and privileges of employment. 42 U.S.C. 12112(a).

53. The ADA's protection against discrimination also prohibits utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability. 42 U.S.C. 12112(b)(3)(A).

54. Defendant violated the ADA by failing to provide Plaintiff with reasonable accommodations. 42 U.S.C. 12112(b)(5)(A).

55. Defendant refused to engage in the interactive process in response to Plaintiff's requests for accommodations. Such accommodations would not have imposed an undue hardship on the operation of the Defendant's business.

56. In terminating the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to his disability, his record of disability, and Defendant's perception of Plaintiff as disabled. See 42 U.S.C. 12112.

57. Defendant has no legitimate, non-discriminatory reason for its conduct.

58. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA").

2. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the ADA.

3. Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff reinstatement, back-pay (plus interest), lost benefits, and compensatory, punitive, and nominal damages.

4. Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is his only means of securing adequate relief.

**JURY DEMAND**

Plaintiff Demands a Trial by Struck Jury.

Respectfully submitted,

/s/ Rachel L. McGinley
Jon C. Goldfarb asb-5401-f58j
Rachel L. McGinley asb-1892-a64m
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC.
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500